UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| TINA GREEN, as Guardian of Darrell Williams,      Plaintiff, V. BLC LEXINGTON SNF, LLC, doing business as BROOKDALE RICHMOND PLACE SNF (KY), et al.,      Defendants. | Civil Action No. 5: 22-089-DCR **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Darrell Williams experienced a wound on his leg while he was a resident of Brookdale Richmond Place, a long-term care facility located in Lexington, Kentucky. His legal guardian, Tina Green, sued Brookdale and its related entities, alleging claims of negligence, negligence *per se*, medical negligence, corporate negligence, and violation of long-term care residents' rights pursuant to K.R.S. § 216.510 *et seq*. The defendants have now filed a motion for summary judgment based on the plaintiff's failure to identify an expert witness.

The defendants' motion will be granted to the extent the plaintiff's claims are based on Williams' wound because it is not the type of injury that is so apparent that the issues fall within the common knowledge of lay jurors. Thus, expert testimony is required. However, fact discovery remains ongoing and the defendant did not address the plaintiff's negligence *per se* claims or the claims alleged under § 216.510 *et seq*. Accordingly, the defendants' request to dismiss the matter in its entirety will be denied.

### I.

Darrell Williams entered Brookdale Richmond Place ("Brookdale"), a long-term care and rehabilitation facility, on or about June 20, 2019. At some point, Williams developed a severe wound on his right lower extremity which reportedly led to sepsis. Green contends that the defendants were negligent because, *inter alia*, they maintained inadequate staffing levels at the facility; failed to provide and implement an adequate nursing care plan; failed to provide treatment in accordance with physicians' orders; and failed to "maintain the facility," including hiring, supervising, and retaining nurses and other employees. [Record No. 1-1] Green also alleges claims of negligence *per se* pursuant to K.R.S. §§ 209.005, 508.090, 530.080 and 902 K.A.R. 20:046, 20:048, 20:300. The defendants contend that all of Green's claims must be dismissed because she failed to disclose any expert witnesses prior to expiration of the deadline for doing so.

### II.

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

A federal court sitting in diversity ordinarily applies the substantive law of the state in which it sits. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Kentucky law generally requires a plaintiff alleging medical negligence to put forth expert testimony to show that the defendant medical provider failed to conform to the applicable standard of care.[1] *See Perkins v. Hausladen*, 828 S.W.2d 652, 654-56 (Ky. 1992). Expert testimony is not required in cases where a jury can reasonably infer negligence and causation based on the mere occurrence of the event and the defendant's relation to it. *See Mahaffey v. McMahon*, 630 S.W.2d 68, 70 (Ky. 1982) (giving amputation of wrong limb as classic example where expert testimony is not needed)  Expert testimony also is not required when the defendant physician makes certain admissions making his negligence apparent. *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010). Neither of those exceptions is present here, as it is undisputed that wounds can develop in the absence of malpractice and the plaintiff has not pointed to any testimony in which a defendant admitted malfeasance. *See Perkins*, 828 S.W.2d at 654-55 (observing that negligence typically cannot be anecdotally inferred from the existence of adverse results).

Green argues that her negligence claims can survive based on the testimony of Williams' treating physicians. Williams was admitted to the hospital in June 2021 for evaluation of a "chronic, nonhealing [right lower extremity] wound." [Record No. 38-2] Evan Lynch, M.D.'s treatment note states: "Reportedly, patient sustained wound several weeks ago, and did not undergo consistent wound care causing localized infection and tissue loss." *Id.*

---

[1] The parties appear to agree that Kentucky law applies.

Lynch noted that Williams' past medical history was positive for insulin-dependent diabetes mellitus, congestive heart failure, and hypertension. The assessment portion of Lynch's note states: "[h]istory and physical exam consistent with nonhealing [right lower extremity] wound from poor vascular perfusion and inconsistent wound care." [Record No. 38-3]

The plaintiff has not pointed to any testimony from Lynch that would define the standard of care or indicate that the defendants breached it. Lynch simply stated that Williams' physical examination was consistent with "inconsistent wound care," which could be the result of any number of factors. A jury could not find the elements of medical negligence satisfied based on this evidence. *See Morgan v. Glazer*, 2011 WL 1217173, at *2-3 (Ky. Ct. App. Apr. 1, 2011) (treating physician's testimony that plaintiff's right ovary was absent was insufficient to sustain a claim for medical negligence).

Green argues that her corporate negligence claim is separate from the negligence of healthcare providers and does not require expert testimony. According to Green, "the focus of inquiry is on the policies and procedures adopted by the corporate hospital and whether it followed those policies and procedures." [Record No. 38, p. 6]. Specifically, she contends that discovery will show that Brookdale enacted various policies and procedures for its nursing staff to monitor and assess skin integrity. Green argues that a failure to follow these procedures constitutes corporate negligence and a lay jury is entitled to determine causation with respect to Williams' skin injury under these circumstances.

Green maintains that Kentucky courts do not require expert testimony to prove a corporate negligence claim. [Record No. 38, p. 12] While it is true that no published Kentucky opinion has addressed this topic head on, the Kentucky Supreme Court's decision in *Lake Cumberland Regional Hospital, LLC v. Adams*, 536 S.W.3d 683 (Ky. 2017) sheds some light

on the issue. *Lake Cumberland* considered whether patients had a cause of action against a hospital for negligent credentialing (a common variety of corporate negligence) of a non-employee physician who was given staff privileges by the hospital. The court observed that hospitals are required to exercise ordinary care and have a duty to make sure that qualified staff are providing appropriate medical care. Further, hospitals can be liable for their own negligence, separate and distinct from any negligence on the part of a physician. *Id.* at 691.

However, the court noted, "a claim of negligence against a hospital for the selection of its physicians is derivative of the medical malpractice claim against the physician" and "[w]ithout proof that the doctor committed malpractice, the plaintiff will be unable to prove causation in the negligence action against the hospital." *Id.* at 691-92. So while expert testimony might not be necessary to prove the negligent credentialing claim, it is necessary to prove the medical malpractice claim upon which the corporate negligence claim is contingent.

Of course, not all corporate negligence claims are based on negligent credentialing. Here, the plaintiff challenges the defendants' failure to follow its own policies and procedures for its nursing staff to monitor and assess skin integrity, which allegedly resulted in Williams' injury. In *Estate of Waters v. Jarman*, 547 S.E.2d 142 (N.C. Ct. App. 2001), the plaintiff sued a hospital after three of its physicians failed to diagnose Waters with appendicitis. The plaintiff's corporate negligence theory against the hospital was based on allegations of negligent credentialing, failing to oversee and monitor the physicians' performances, and failing to follow its own procedures.

The Court of Appeals of North Carolina considered whether the corporate negligence claim constituted a medical malpractice action for purposes of the state's medical review requirement. *See* N.C.G.S. § 1A-1, Rule 9(j). It observed that there are two general types of

- 5 -

corporate negligence claims asserted against hospitals: "(1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital." *Id.* at 144. Unsurprisingly, the court applied the standard described in the first scenario and required plaintiffs to obtain expert medical review because the claim arose out of clinical care provided by the hospital to the patient.

Here too, the plaintiff's claim arises out of a physical injury allegedly caused by inadequate clinical care provided by the defendants. Applying the persuasive decisions in *Lake Cumberland* and *Waters*, the absence of expert testimony is fatal to Green's corporate negligence claim. Her claim is derivative of a medical malpractice claim, as she argues that Williams' wound was caused, at least in part, by nursing staff's failure to monitor and assess his skin integrity in accordance with the hospital's policy. The plaintiff suggests that this information falls within the scope of common knowledge of laypersons, but neither common sense nor relevant legal authority support that conclusion. *See Hernandez v. United States*, 2009 WL 1586809, at *5 (E.D. Ky. June 5, 2009) (proper treatments for skin eruptions on face were not common knowledge and required expert testimony); *Gleed v. AT&T Servs., Inc.*, 2016 WL 1451532, at *4 (E.D. Mich. Apr. 12, 2016) (observing that opinion on the cause of plaintiff's psoriasis did not constitute "lay facts" and necessarily required physician to use his or her scientific, technical, or other specialized knowledge to form such an opinion).

Finally, Kentucky Revised Statutes § 216.515 sets forth a bill of rights for residents of long-term care facilities. While this law encompasses traditional common law duties to avoid negligently or intentionally injuring residents, it also creates new rights such as the right to be treated with consideration, respect, and dignity; the right to have a responsible family member

notified immediately of any accident; and the right to have an adequate and appropriate resident care plan developed. *See Overstreet v. Kindred Nursing Ctrs. Ltd. P'Ship*, 479 S.W.3d 69, 75 (Ky. 2015). This provision creates a private cause of action to enforce the rights enumerated therein. § 216.515(26). While the precise nature of Green's claims under the patient bill of rights is unclear, the defendants did not raise any argument in favor dismissing this count until their reply. Likewise, the defendant's motion for summary judgment failed to address Green's negligence *per se* claims or explain why they fail based on the absence of expert testimony. As a result, the defendants' motion will be denied, without prejudice, with respect to these claims.

IV.

Based on the foregoing, it is hereby

**ORDERED** that the defendants' motion for summary judgment [Record No. 32] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: January 23, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky